[L:A. No. 30397. In Bank. Dec. 24, 1975.]

CURLEE TOWNSEND, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Richard S. Buckley, Public Defender, Harold E. Shabo, Richard Millard, Michael Rothschild and Martin Stein, Deputy Public Defenders, for Petitioner.

John H. Larson, County Counsel, and John P. Farrell, Deputy County Counsel, for Respondent.

No appearance for Real Party in Interest.

## OPINION

**RICHARDSON, J.**—In this case we are called upon to interpret and apply the provisions of California Penal Code section 1382 which require that a criminal defendant, in most felony cases, be brought to trial within 60 days after the filing of an accusatory pleading. In particular, we consider the effect of that statute in relation to the traditional power of trial counsel to control the proceedings.

Petitioner, defendant in a criminal action currently pending in Los Angeles County Superior Court, seeks an extraordinary writ requiring respondent court to set aside its order denying, and directing the grant of, his motion to dismiss. Petitioner alleges violation of his constitutional right to a speedy trial as that right is implemented by Penal Code section 1382, subdivision 2. This section provides:

"The court, unless good cause to the contrary is shown, must order the action to be dismissed in the following cases: . . . 2. When a defendant is not brought to trial in a superior court within 60 days after the finding of the indictment or filing of the information . . . ; except that an action shall not be dismissed under this subdivision if it is set for trial on a date beyond the 60-day period at the request of the defendant or with his consent, express or implied, or because of his neglect or failure to appear and if the defendant is brought to trial on the date so set for trial or within 10 days thereafter."

In the matter before us we have concluded, as we develop below, that the requested relief must be denied since trial herein was finally set to commence within the 10-day period contemplated by section 1382, subdivision 2.

We describe the procedural history of the case occurring in 1974. On August 16 an information was filed in respondent court, charging petitioner with a violation of Health and Safety Code section 11352 (sale of a controlled substance), and further alleging a prior conviction under

former Health and Safety Code section 11530 (possession of marijuana). A public defender was appointed to represent petitioner, and the matter was continued to August 29. On that date, a plea of not guilty was entered and, with counsel's consent, the court set a trial date of October 25. A series of delays ensued in bringing petitioner to trial. On October 25 Deputy Public Defender Millard, then representing petitioner, requested a continuance until October 28 because his heavy caseload had prevented him from adequately preparing for petitioner's trial. On October 28 the same counsel moved for another continuance on the same grounds, and trial was tentatively reset for November 7.

On November 7 Millard was engaged in another trial and unable to make the scheduled appearance in petitioner's case. Deputy Public Defender Blum appeared on petitioner's behalf and informed the court of the reasons for Millard's absence. It was thereupon agreed between court and counsel that the matter be "trailed" or continued from day to day until such time as Millard became available. This "trailing" continued until November 12, on which day Millard appeared, announced he was "ready" for trial, but also explained to the court that he was "trailing" in another case, People v. Bond. Because the *Bond* matter was deemed by defense counsel to be the more pressing of the two, Millard once again requested that petitioner's case be trailed from day to day, pending his completion of the *Bond* trial. Millard stated to the court that he did not expect *Bond* to take more than an hour or two once trial began. On November 13, another appearance was made by Millard at which time he indicated to the court that the situation was unchanged, and the court observed that "time is running." This was an apparent reference to the last sentence of section 1382, subdivision 2, requiring that a defendant be brought to trial within the 10-day period therein described. Defense counsel concurred in the court's assessment of the status of the case.

On Friday, November 15, Millard again appeared, notified the court that *Bond* was set for trial at 2 p.m. that afternoon, and that he would be available to try petitioner's case immediately thereafter. Trial was thereupon reset for Monday, November 18, and the trial judge opined that the 10-day period in question would expire on the 18th. Millard agreed, but nevertheless specifically requested that the case be put over to the 18th.

On Monday, November 18, prosecution and defense counsel both appeared, ready and willing to proceed. However, at this time the court

on its own motion, a second judge sitting, over the objection of defense counsel who argued that the case was then in its 10th and final day, continued the matter until November 25 because of a calendar conflict. The court calculated that the 25th would be the 7th day of the 10 days contemplated in section 1382, subdivision 2. The defense objection was overruled and on November 19 a motion to dismiss was filed in the superior court on the ground that petitioner's right to a speedy trial had been violated. The motion was denied. On November 27 proceedings below were stayed pending this court's determination of the matter.

The parties make conflicting assertions. Petitioner argues that the 10-day "grace period" provided in section 1382, subdivision 2, commenced on November 12, the date on which his counsel announced that he was "ready" for trial, but was "trailing." Respondent contends that the 10-day period began on the 18th, the date on which both parties were unconditionally "ready" for trial, and that a trial date of November 25 was therefore within the statutory period.

■ It is fundamental that the general right to "a speedy and public trial" guaranteed by the Sixth Amendment to the United States Constitution is encompassed within the due process clause of the Fourteenth Amendment and is thus fully applicable to the states. (*Klopfer* v. *North Carolina* (1967) 386 U.S. 213, 223 [18 L.Ed.2d 1, 8; 87 S.Ct. 988].) Article I, section 13 of the California Constitution contains similar language and the Legislature has re-expressed and amplified the guarantee by various statutory enactments including Penal Code section 1382. (See, e.g., Pen. Code, §§ 686, subd. 1, 1050, and 1381 et seq.) We have previously observed that the provisions of section 1382 are intended to implement a broader policy clearly expressed in the following language of Penal Code section 1050: "The welfare of the people of the State of California requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time, and it shall be the duty of all courts and judicial officers and of all prosecuting attorneys to expedite such proceedings to the greatest degree that is consistent with the ends of justice." (See *Sykes* v. *Superior Court* (1973) 9 Cal.3d 83, 88 [106 Cal.Rptr. 786, 507 P.2d 90].)

■ The prerogative writ is a proper remedy where violation of Penal Code section 1382 is alleged (*People* v. *Wilson* (1963) 60 Cal.2d 139, 149-150 [32 Cal.Rptr. 44, 383 P.2d 452]), and where such a violation is shown, dismissal is mandatory, regardless of whether petitioner makes an affirmative showing of prejudice (*Sykes* v. *Superior Court, supra,* at

p. 89). Dismissal does not necessarily mean, however, that the defendant is immune from further prosecution. (See Pen. Code, § 1387; *Crockett* v. *Superior Court* (1975) 14 Cal.3d 433 [121 Cal.Rptr. 457, 535 P.2d 321].)

Before we review the arithmetic involved in the significant calendar dates in the matter before us we consider and resolve a preliminary issue. The 10-day grace period described in section 1382, subdivision 2, becomes operative only when defendant has consented, expressly or impliedly, to a trial date beyond the basic 60-day limit. Petitioner at no time personally agreed to a continuance beyond 60 days. In fact, at every stage of the proceedings, when present, petitioner refused to "waive time," pointed out to the court that he had been in custody beyond 60 days, and demanded to be tried or released. Consistent with his position, petitioner refused to join in his counsel's various requests for, or consents to, a continuance. On November 15 he filed, in propria persona, a petition for writ of habeas corpus alleging a violation of his right to a speedy trial. This petition was summarily denied.

We consider the question—did the consent of petitioner's counsel to the various extensions of time bind petitioner? If not, the 60-day period contemplated by section 1382 having elapsed, the calculation of the 10-day grace period becomes moot and the information must be dismissed.

We have concluded, subject to certain limitations, that consent of counsel alone without that of the client, satisfies section 1382, subdivision 2. While no previous California cases have considered the precise issue, the general import of other cases dealing with similar issues arising from related and parallel circumstances supports such a conclusion. In *People* v. *Kirkpatrick* (1972) 7 Cal.3d 480, 485-486 [102 Cal.Rptr. 744, 498 P.2d 992] for instance, we rejected a speedy trial claim despite the fact that the defendant had personally refused to waive time. Citing *People* v. *Merkouris* (1956) 46 Cal.2d 540, 554 [297 P.2d 999], we held that counsel's consent to delays beyond 60 days is sufficient, at least where the continuances are reasonable. In *People* v. *Wilson* (1974) 40 Cal.App.3d 913 at page 915 [115 Cal.Rptr. 619], the Court of Appeal upheld the trial court's grant of continuances at counsel's request where no affirmative consent was obtained from the defendant, the court stating in dictum that "even if appellant had voiced an objection, his attorney would have had authority to seek continuance over the client's protest. [Citations.]"

■ In general, it is well established that the power to control judicial proceedings is vested exclusively in counsel. (*People* v. *Kirkpatrick, supra,* 7 Cal.3d 480, 486; *People* v. *Floyd* (1970) 1 Cal.3d 694, 704 [83 Cal.Rptr. 608, 464 P.2d 64] *People* v. *Merkouris, supra,* 46 Cal.2d 540, 554.) It follows that "[e]xcept where representation by counsel is so ineffective that it can be described as a 'farce and a sham' [citations], an attorney may ordinarily waive his client's rights . . . ." (*People* v. *Hill* (1967) 67 Cal.2d 105, 114 [60 Cal.Rptr. 234, 429 P.2d 586].) Where counsel has been appointed and is present in court "neither the party himself [citations] nor another attorney [citations], can be recognized." (*People* v. *Merkouris, supra,* 46 Cal.2d at pp. 554-555.) While the United States Supreme Court has recently held that a criminal defendant cannot be denied the right to represent himself if he knowingly and intelligently chooses to forego the assistance of counsel (*Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525]), *Faretta* has no effect on cases such as that before us where counsel has in fact been appointed. In such instances, *Faretta,* in discussing California criminal procedure, notes: "The appointed counsel manages the lawsuit and has the final say in all but a few matters of trial strategy. [Citations.]" (*Faretta* v. *California, supra,* 422 U.S. at p. 812, fn. 8 [45 L.Ed.2d at p. 569].)

■ Counsel's control, of course, is not unlimited, and there are certain fundamental protections guaranteed an accused which counsel may not waive without his client's concurrence. (*Brookhart* v. *Janis* (1966) 384 U.S..1, 7 [16 L.Ed.2d 314, 318, 86 S.Ct. 1245] [jury trial and confrontation];*People* v. *Williams* (1970) 2 Cal.3d 894, 905 [88 Cal.Rptr. 208, 471 P.2d 1008] [same]; *People* v. *Robles* (1970) 2 Cal.3d 205, 215 [85 Cal.Rptr. 166, 466 P.2d 710] [right to testify in own defense].) The right to a speedy trial is undeniably "as fundamental as any of the rights secured by the Sixth Amendment" (*Klopfer* v. *North Carolina, supra,* 386 U.S. 213, 223 [18 L.Ed.2d 1, 8]), and we have previously stated in dictum that counsel may not waive this *constitutional* right over his client's objections. (*People* v. *Floyd, supra,* 1 Cal.3d 694, 706-707.) In contrast, however, the *statutory* right to be tried within 60 days (§ 1382, subd. 2) cannot properly be termed "fundamental" in the foregoing sense and therefore beyond counsel's primary control. Being of statutory origin, a defendant's rights under section 1382 are "merely supplementary to and a construction of the Constitution. [Citations.]" (*Sykes* v. *Superior Court, supra,* 9 Cal.3d 83, 89.) They do not carry the force or weight of constitutionally mandated imperatives. In this connection we think it significant that the United States Supreme Court has clearly rejected the proposition that the constitutional right to a speedy trial ". . . can be

quantified into a specified number of days or months." (*Barker* v. *Wingo* (1972) 407 U.S. 514, 523 [33 L.Ed.2d 101, 113, 92 S.Ct. 2182].)

The case before us presents a confrontation between two of the defendant's rights, the right to a speedy trial constitutionally guaranteed and statutorily implemented and amplified within the time framework of Penal Code section 1382 on the one hand, and his Sixth Amendment right to competent and adequately prepared counsel on the other. In such a situation, in the words of the appellate court in *People* v. *Powell* (1974) 40 Cal.App.3d 107, 148 [115 Cal.Rptr. 109], the trial court must carefully navigate procedurally between "the Scylla of delay and the Charybdis of ineffective and inadequate representation."

Cognizant of the foregoing legal principles, we examine the procedural sequence in the instant matter. Petitioner argues that when Deputy Public Defender Millard appeared on November 12 and announced that he was "ready" for trial, the 10-day grace period began. He asserts that while there may have been a one day *"tolling"* of the grace period during the interval between the 12th and the 18th (while the deputy public defender assigned to his case was in another trial), the 10 days having commenced on November 12 nevertheless expired prior to November 25. There is no authority, either in the language of section 1382, subdivision 2, or in case law to support petitioner's "tolling" theory. Furthermore, we need not concern ourselves with the validity of this contention since the assumption upon which it depends is the result of a misinterpretation of section 1382, subdivision 2, as we demonstrate below.

In asserting that the 10-day period contemplated by section 1382 began on November 12, petitioner relies on *People* v. *Wilson, supra,* 60 Cal.2d 139, 145. That reliance is misplaced. In *Wilson,* a trial date had been set for August 25 and all counsel appeared on that day ready for trial. We held that the trial court erred in granting the prosecution a continuance until October 31, and that the statutory 10-day period commenced running on August 25. However, in *Wilson,* defense counsel specifically objected to any further delays and we noted that "the last day to which defendant in any way consented was August 25, 1960." (*Id.,* at p. 145.) Here, in contrast, no such objection was forthcoming on November 12. On that day, defense counsel himself asked that petitioner's case trail from day to day until he had finished "the Bond matter." The situation remained unchanged until November 15, when counsel appeared once again and informed the court that he would

complete the *Bond* trial late that afternoon. November 15 being a Friday, the court suggested that trial be set for Monday, November 18. Defense counsel agreed. While it is true that counsel indicated at the proceedings of November 7, 12 and 15, that he believed the 10-day period was expiring, such a statement was based on his erroneous interpretation of the statute, and did not constitute an objection to further continuances.

It was not until November 18, when the court announced trial would be held November 25, that defense counsel for the first time made any affirmative objection to further delay. In the absence of such an objection, the defense is deemed to have consented to the continuance. (*People* v. *Wilson, supra,* 60 Cal.2d 139, 146; *Castaneda* v. *Municipal Court* (1972) 25 Cal.App.3d 588, 594 [102 Cal.Rptr. 230].) ▉ As expressed in *Tudman* v. *Superior Court* (1972) 29 Cal.App.3d 129, 132-133 [105 Cal.Rptr. 391] with reference to section 1382: "The statute provides that an action need not be dismissed if it is set for trial beyond the 60-day period with the consent of the defendant and if defendant is brought to trial within 10 days thereafter. The word 'thereafter' refers back to the date the case was set with the defendant's consent."

▉ While the record discloses that on November 12 defense counsel responded that he was "ready" for trial, in truth and in fact he was not "ready" to proceed because of legitimate commitments in another case and it was not until November 18 that he was actually and unconditionally free to commence trial proceedings in the case before us. By counsel's failure to object, and in some instances by his affirmative requests for delay, petitioner has effectively consented to every postponement up to and including November 18. When, through counsel, he objected on that day to any further continuance, the critical 10-day period commenced. (*People* v. *Wilson, supra,* 60 Cal.2d 139, 145.) The trial was set within a 10-day period thereafter.

Accordingly, three reasons appear for the delay in petitioner's trial: (1) Inability of defense counsel adequately to prepare for trial announced by him on October 25th and 28th, (2) conflict in trial dates involving defense counsel resulting in a "trailing" which occurred on November 7th, 12th, 13th and 15th, and (3) a court calendar conflict on November 18th. Inadequacy of time for defense counsel to prepare for trial, and calendar conflicts of court and defense counsel account for the delay involved.

We are cognizant of the heavy caseloads resting upon the criminal trial courts of this state and upon the affected prosecutors' and public

defenders' offices as well, and for the sheer necessity of the "trailing" practice here indulged. We have concluded that the trial court adopted the proper course in the matter before us. However, our holding herein is carefully circumscribed. We do not suggest that counsel possesses carte blanche under any and all conditions to postpone his client's trial indefinitely. Counsel's power in this regard is not unlimited. "[A] criminal defendant may not be deprived of a speedy trial because the prosecution—or the defense—is lazy or indifferent, or because the prosecution seeks to harass the defendant rather than bring him fairly to justice . . . ." (*People* v. *Floyd, supra,* 1 Cal.3d 694, 707.) No such circumstances are herein presented. Nor may counsel effectively waive his client's rights where the record reveals that the latter was the victim of inadequate representation. (See *People* v. *Hill, supra,* 67 Cal.2d 105, 114.) This is not such a case. All requests for continuance were reasonably justified. Defense counsel is undoubtedly well qualified to represent petitioner, and is pursuing his client's best interests in a competent manner.

We, accordingly, conclude that the trial date of November 25 was within the time reference contemplated by section 1382, subdivision 2.

The petition for writ of prohibition is denied.

Wright, C. J., McComb, J., Sullivan, J., and Clark, J., concurred.

**MOSK, J.**—I dissent.

I agree with Justice Tobriner's dissent in general and reach the same conclusion: that defendant has been denied his right to a speedy trial. Implicit in the majority opinion is the concept that convenience of the court, condition of the calendar and workload of counsel all take precedence over the constitutional and statutory requirements of a speedy trial. The result is a gross inversion of priorities.

While making common cause with my dissenting colleague's conclusion, I do not concede that counsel has the authority incident to the power to control trial tactics, to waive the statutory speedy trial provisions, particularly when the waiver by counsel is made over the express objections of defendant.

In *Linsk* v. *Linsk* (1969) 70 Cal.2d 272 [74 Cal.Rptr. 544, 449 P.2d 760], this court in a unanimous opinion discussed in depth the authority of

counsel. While *Linsk* was a civil case, it dealt with an unauthorized stipulation by counsel and thus is apposite to the instant problem. Construing the statutory declaration that an attorney may bind his client "in any of the steps of an action or proceeding" (Code Civ. Proc., § 283), we held that counsel is authorized by virtue of his employment to bind the client in procedural matters arising during the course of the action, but not to impair the client's substantial rights (*id.,* at p. 276).

We explicated the issue in this manner: "The dichotomy in the foregoing cases appears to relate to whether the attorney has relinquished a substantial right of his client in entering into a stipulation on his behalf. If counsel merely employs his best discretion in protecting the client's rights and achieving the client's fundamental goals, his authority to proceed in any appropriate manner has been unquestioned. On the other hand, if counsel abdicates a substantial right of the client contrary to express instructions, he exceeds his authority." (*Id.,* at p. 278.)

Thus the question before us is whether counsel forfeited "a substantial right of his client contrary to express instructions." I fail to see how an objective analysis could reach any conclusion other than that defendant's substantial rights were adversely affected when he was compelled to languish in jail confinement for more than 100 days following arraignment without being brought to trial. It is undenied that defendant vehemently protested at every available opportunity, in the presence of his counsel and the court.

Fundamental constitutional rights are not susceptible of waiver except by the defendant personally. (E.g., *In re Mosley* (1970) 1 Cal.3d 913, 924 [83 Cal.Rptr. 809, 464 P.2d 473] [right to plead not guilty and stand trial]; *People* v. *Holmes* (1960) 54 Cal.2d 442, 444 [5 Cal.Rptr. 871, 353 P.2d 583] [jury trial]; *In re Tahl* (1969) 1 Cal.3d 122, 132 [81 Cal.Rptr. 577, 460 P.2d 449] [privilege against compulsory self-incrimination; trial by jury; right to confront accusers]; *People* v. *Robles* (1970) 2 Cal.3d 205, 215 [85 Cal.Rptr. 166, 466 P.2d 710] [right to testify].) Article I, section 15, of our Constitution—surely entitled to as much respect as other provisions of our bill of rights—guarantees to a defendant in a criminal case "the right to a speedy public trial." Penal Code section 686, subdivision 1, reiterates the defendant's entitlement to "a speedy and public trial."

It is true that "speedy" is a comparative term, not defined with specificity in the Constitution. To ascertain its outer limits, then, we turn to Penal Code section 1382, which states that in the absence of good

cause the trial court *must* dismiss an action not brought to trial in the superior court within 60 days after the finding of the indictment or filing of the information.[1]

In *People* v. *Wilson* (1963) 60 Cal.2d 139, 145 [32 Cal.Rptr. 44, 383 P.2d 452], and *People* v. *Godlewski* (1943) 22 Cal.2d 677, 682 [140 P.2d 381], this court declared that the Penal Code provisions cited above are "supplementary to and a construction of" the Constitution. In *Harris* v. *Municipal Court* (1930) 209 Cal. 55, 61 [285 P. 699], we referred to "the legislative interpretation of the constitutional provision," and in *Sykes* v. *Superior Court* (1973) 9 Cal.3d 83, 89 [106 Cal.Rptr. 786, 507 P.2d 90], failure to comply with Penal Code section 1382 was found to be "prima facie in violation of a defendant's constitutional right." (Fn. omitted.)

Thus I conclude that the speedy trial guaranteed by the Constitution, and explicated in the Penal Code, is a substantial right of the defendant. For a waiver of that right to be valid, it must be made by the defendant personally and not by a surrogate.[2]

Since the defendant did not personally waive his right to a speedy trial, and since the statute interpreting the outer limits of the constitutional right to a speedy trial was violated over defendant's persistent objections, I would issue the writ.

**TOBRINER, J.**—I dissent.

The majority characterize this case as one involving a conflict between a defendant's right to a speedy trial and his right to effective assistance of counsel. With all due respect, I believe that a careful examination of the realities of this case reveals no such conflict. Rather, the fundamental question at issue is whether a defendant's right to a speedy trial can in

---

[1]In the measure known as the Speedy Trial Act of 1974, Congress indicated that the Sixth Amendment guarantee of a speedy trial requires "the trial of the defendant shall commence within sixty days from arraignment on the information or indictment . . . ." (18 U.S.C., ch. 208, § 3161, subd. (c).) Indeed, even if defendant or his counsel request a continuance the federal act requires the trial court to make a finding that the "ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial" (18 U.S.C., ch. 208, § 3161, subd. (h)(8)(A)). Subsequent sections suggest the primary factor to be considered in evaluating the ends of justice is the unusual or complex nature of the case.

[2]Finding bad faith by the defendant, this court permitted counsel to waive defendant's speedy trial rights in *People* v. *Floyd* (1970) 1 Cal.3d 694, 707 [83 Cal.Rptr. 608, 464 P.2d 64]; but in that case we also gave an unmistakable signal that ordinarily "the attorney's consent to the continuances over the client's objection would not constitute a waiver of the right to speedy trial" (*Id.*, at p. 706).

practice be denied to an indigent defendant by a county's appointment of a counsel who is too heavily burdened and overworked to bring the defendant's case to an expeditious trial.

In the instant situation, defendant faced a charge of possession of narcotics. Because of his indigence the court appointed the public defender to represent him. Defendant remained incarcerated following arraignment. He continuously claimed his right to be tried within 60 days and vociferously refused to consent to any continuances. Nevertheless, his counsel, the public defender, requested a number of such continuances; these requests for more time, entered over defendant's objections, did not emanate from the complexity of defendant's case or from misconduct of defendant but from the public defender's own heavy case load. Although he was in no way responsible for, and did not acquiesce in, the delay, defendant was compelled to wait in jail for over 100 days following arraignment without being brought to trial.

The majority consider the initial question in this case to be whether counsel could waive the rights described in section 1382 without defendant's consent. Concluding that counsel has such power, the majority characterize the 60-day period in section 1382 as "merely" a statutory right to a speedy trial rather than a constitutional right. This conclusion may be questioned on its own terms, for we have long held that section 1382 embodies a legislative interpretation of the state constitutional right to a speedy trial as guaranteed by article I, section 15 of the California Constitution. (*People* v. *Morino* (1890) 85 Cal. 515, 517 [24 P. 892]; *In re Begerow* (1901) 133 Cal. 349, 352 [65 P. 828]; *Harris* v. *Municipal Court* (1930) 209 Cal. 55, 61 [285 P. 699]; *People* v. *Clark* (1965) 62 Cal.2d 870, 882 [44 Cal.Rptr. 784, 402 P.2d 856]; *Crockett* v. *Superior Court* (1975) 14 Cal.3d 433, 438-439 [121 Cal.Rptr. 457, 535 P.2d 321].)[1]

---

[1] In *Harris*, we wrote: "What is a 'speedy trial,' as those words are used in the Constitution? The legislature in section 1382 of the Penal Code has declared that unless a defendant in a felony case has been brought to trial within sixty days after the finding of the indictment or the filing of the information, the court must, in the absence of good cause shown for the delay, dismiss the prosecution. Thus the legislature by necessary inference has said that a trial delayed more than sixty days without good cause is not a speedy trial, and the courts have not hesitated to adopt and enforce the legislative interpretation of the constitutional provision." (209 Cal. at p. 61.)

The cases cited by the majority to support the proposition that Penal Code section 1382 is merely a statutory right, rather than a constitutional requirement, are not on point. In *Sykes* v. *Superior Court* (1973) 9 Cal.3d 83 [106 Cal.Rptr. 786, 507 P.2d 90], we held that article I, section 15 of the state Constitution is a self-executing provision and therefore may govern matters not specifically discussed in the interpretative statutes. Nevertheless, we specifically stated that failure to observe the statutory time limits

Assuming, however, that a counsel generally does have authority, incident to the power to control trial tactics, to decide that the complexity of a defendant's case or the need for investigation warrants a waiver of the statutory speedy trial provision, it does not follow that the waiver in the instant case was proper. Here, defendant's defense was not so "complex and myriad" that counsel needed additional time to prepare effectively for trial. (See *People* v. *Powell* (1974) 40 Cal.App.3d 107 [115 Cal.Rptr. 109].)[2] If the delay had resulted from such circumstances, then there would be some justification for the majority's characterization of the case as a conflict between defendant's right to a speedy trial and his right to effective counsel. Here, however, the delay ensued simply because the defense counsel was overburdened with *other* cases which took precedence over that of the defendant.

If an affluent defendant chooses to employ a counsel who is involved in many other cases, then the courts, quite appropriately, can require the defendant to wait until his selected counsel is ready for trial; if the delay is unacceptable to the defendant, he can always engage another, less burdened attorney. The indigent defendant, however, can exercise no such option. If the public defender who is appointed to represent him is already handling so many cases that the defendant's case must "trail" beyond the 60-day period, the indigent necessarily loses his statutory right to a speedy trial. He must take his turn in the public defender's long line of undertakings and await a trial date after the expiration of the 60-day period contemplated by section 1382 when the beleaguered public defender has finally disposed of all the preceding cases. The

prescribed by Penal Code section 1382 "is prima facie in violation of a defendant's constitutional right." (9 Cal.3d 83, 89.)

*Barko* v. *Wingo* (1972) 407 U.S. 514 [33 L.Ed.2d 101, 92 S.Ct. 2182], cited by the majority to support the proposition that the constitutional right to a speedy trial cannot be quantified into a specific time period, dealt only with the *federal* right, as guaranteed by the Sixth Amendment. The opinion did not deal with *state* constitutional guarantees of the right to a speedy trial. Indeed, the court in *Barker* specifically stated: "We do not establish procedural rules for the States, except when mandated by the Constitution. We find no constitutional basis for holding that a speedy trial can be quantified into a specific number of days or months. The States, of course, are free to prescribe a reasonable period consistent with constitutional standards, but our approach must be less precise." (407 U.S. 514, 523 [33 L.Ed.2d 101, 113].) In *Sykes* v. *Superior Court, supra,* 9 Cal.3d 83, 91, we wrote that "There are significant reasons why the balancing test employed by the Supreme Court in interpreting the federal constitutional provision is not applicable in interpreting our constitutional provision. . . . A material distinction is the absence of any statutory language which implements the federal constitutional guarantee while the state constitutional guarantee is so implemented. . . ."

[2]Moreover, unlike *People* v. *Floyd* (1970) 1 Cal.3d 694 [83 Cal.Rptr. 608, 464 P.2d 64] or *People* v. *Bryant* (1970) 5 Cal.App.3d 563 [85 Cal.Rptr. 388], defendant's delay in being brought to trial was not due to his own misconduct.

"trailing" practice, as thus employed, completely negates the indigent defendant's right to a speedy trial.

Moreover, the above discussion additionally demonstrates that the "trailing" practice, as pursued in this case, also denied defendant the equal protection of the laws, for it deprived him of the benefits of section 1382 *simply on the basis of his indigency.* The courts have repeatedly held, of course, that when a state grants a right to criminal defendants generally, it must guarantee that indigent defendants can avail themselves of the right. In *Griffin v. Illinois* (1956) 351 U.S. 12, 17-19 [100 L.Ed. 891, 898-899, 76 S.Ct. 585, 55 A.L.R.2d 1055], the seminal decision in this long line of cases, the United States Supreme Court observed: "Both equal protection and due process emphasize the central aim of our entire judicial system—all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.' . . . In criminal trials a State can no more discriminate on account of poverty than on account of religion, race or color. . . . There can be no equal justice where the kind of trial a man gets depends on the amount of money he has."[3]

On its face, Penal Code section 1382 guarantees to all defendants, rich or poor, the right to be brought to trial within 60 days of arraignment. In the instant case, however, defendant suffered a denial of this section's protection simply because his indigency necessitated resort to the understaffed public defender's office and the trailing practice permitted appointed counsel to waive defendant's right to speedy trial over defendant's objection. Because an affluent defendant could not be compelled to abide by his counsel's waiver in similar circumstances, the trailing practice denies an indigent defendant the equal protection of the laws.

This result cannot be justified on the ground that an indigent defendant has no right to the appointment of a particular attorney and must be satisfied with whatever counsel the state chooses to afford him.

---

[3]The *Griffin* principle, initially addressed to the state's obligation to provide an indigent defendant with a free transcript on appeal, has been applied in a great variety of circumstances. (See, e.g., *Burns v. Ohio* (1959) 360 U.S. 252 [3 L.Ed.2d 1209, 79 S.Ct. 1164] [right of an indigent to avoid filing fee]; *Douglas v. California* (1963) 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814] [right of an indigent to obtain appointed counsel, if the state guarantees a right to counsel on appeal]; *Anders v. California* (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396] [right of an indigent to prosecute a "frivolous" appeal, if the state extends this right to others]; see also *McCrary v. Indiana* (1960) 364 U.S. 277 [4 L.Ed.2d 1706, 80 S.Ct. 1410]; *Entsminger v. Iowa* (1967) 386 U.S. 748, 751 [18 L.Ed.2d 501, 503-504, 87 S.Ct. 1402]; *Williams v. Oklahoma City* (1969) 395 U.S. 458 [23 L.Ed.2d 440, 89 S.Ct. 1818].)

(See, e.g., *People* v. *Massie* (1967) 66 Cal.2d 899 [59 Cal.Rptr. 733, 428 P.2d 869].) Although it is true that *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733] and its progeny place no absolute strictures on the states in their assignment of counsel, the controlling precedents of both the United States Supreme Court and this court establish beyond dispute that to satisfy constitutional standards an attorney appointed to represent an indigent must be capable of affording such defendant the *effective* assistance of counsel. (See, e.g., *In re Saunders* (1970) 2 Cal.3d 1033, 1041 [88 Cal.Rptr. 633, 472 P.2d 921]; *In re Williams* (1969) 1 Cal.3d 168, 176 [81 Cal.Rptr. 784, 460 P.2d 984]; *Powell* v. *State of Alabama* (1932) 287 U.S. 45, 72 [77 L.Ed. 158, 172, 53 S.Ct. 55, 84 A.L.R. 527].)[4] A county does not meet this constitutional obligation when it appoints a counsel who, because of his own heavy caseload, is unable to bring the defendant's case to trial within the statutorily mandated time period. The state cannot rely upon the obligations which an appointed counsel owes to other clients to excuse its denial of the *effective* protection of the present defendant's right to a speedy trial.

As I see it, this case presents one relatively straightforward and fundamental question: May a county effectively repeal an indigent defendant's right to a speedy trial simply by refusing to appoint a sufficient number of public defenders? While I do not disparage the financial burdens currently faced by local authorities, it has long been clear that such considerations cannot justify the deprivation of a criminal defendant's constitutional rights.

I therefore conclude that defendant has been improperly denied his right to a speedy trial. Accordingly, I would issue the requested writ of prohibition.

---

[4]In *In re Saunders* (1970) 2 Cal.3d 1033, 1041 [88 Cal.Rptr. 633, 472 P.2d 921], we specifically declared: "The constitutional right to the assistance of counsel in a criminal case . . . includes the guarantee that such assistance be 'effective.' "